IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

TRINITY LEARNING SOLUTIONS, INC.,
a New Mexico corporation, DONALD BASS,
individually, and JAMIE MORLEY, individually,

        Plaintiffs,

vs.                                                       No. CV 99-041 SC/RLP

BRUCE D. HAMLETT, Executive Director of
New Mexico Commission on Higher Education,
individually,

        Defendant.

## MEMORANDUM OPINION AND ORDER

THIS MATTER is before the Court on Defendant's Motion for Summary Judgment, filed July 26, 1999 (Doc. No.13). For the reasons contained in this opinion, the motion will be GRANTED.

This is a 42 U.S.C. § 1983 civil rights action seeking damages for alleged due process violations. Plaintiffs Donald Bass and Jamie Morley are president and vice-president of Plaintiff Trinity Learning Solutions, Inc. ("Trinity"), a New Mexico corporation. They claim they suffered damages when Defendant Bruce Hamlett, the executive director of the New Mexico Commission on Higher Education, induced Parks College to terminate their contract because of an erroneous interpretation of agency regulations. They allege that this precluded them from obtaining related employment for a period of five years. Defendant moves for summary judgment, arguing that Plaintiffs

were not entitled to procedural due process because they did not have a constitutionally protected property right in the contract with Parks College, and that there is no basis for a substantive due process claim. Defendant also contends that he is entitled to qualified immunity.

**Summary Judgment Standards**

Summary judgment is appropriately granted when the court, viewing the record in the light most favorable to the non-moving party, determines that "there is no genuine dispute over a material fact and the moving party is entitled to judgment as a matter of law." Thrasher v. B & B Chemical Co., 2 F.3d 995, 996 (10th Cir. 1993); Russillo v. Scarborough, 935 F.2d 1167, 1170 (10th Cir. 1991). The party moving for summary judgment bears the initial burden of showing "there is an absence of evidence to support the nonmoving party's case." Bacchus Indus., Inc. v. Arvin Indus., Inc., 939 F.2d 887, 891 (10th Cir. 1991). Once the movant meets this burden, the opposing party must provide the court with specific facts showing a genuine dispute for trial. Fed. R. Civ. P. 56(e); Gray v. Udevitz, 656 F.2d 588, 592 (10th Cir. 1981). A dispute about a material fact is "genuine" where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Ingels v. Thiokol Corp., 42 F.3d 616, 620 (10th Cir. 1994), *quoting* Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

**Factual and Administrative Background**

The following facts are presented in a light most favorable to Plaintiffs. Bass and

Morley worked as teachers at Franklin College, a private, post-secondary educational institution located in Albuquerque, New Mexico, for several years. Eventually they both were given management titles by the owner of Franklin College, Bass as manager of training and development for instructors, and Morley as "Executive Director." Their duties included some management responsibilities, but neither one was given final decision-making authority on any matters, and neither one ever had access to or control over any of the finances of the institution.

Pursuant to the Post-Secondary Educational Institution Act, private colleges in New Mexico are licensed and regulated by the Commission on Higher Education. *See* N.M. Stat. Ann. 1978 § 21-23-1, *et seq.* (Repl. Pam. 1996). Franklin College experienced problems with its finances and with other aspects of its licensure, and eventually closed its doors in mid-August 1998. In violation of the Act, Franklin College failed to provide "teach-outs" for its existing students at other institutions. *See* Id. § 21-23-6.2(C)(6).[1] A couple of weeks before Franklin College closed, Bass and Morley resigned their positions and formed Trinity with the intention of setting up their own private college to provide computer classes they describe as "distance learning education in Microsoft software certification training."

The Commission has adopted rules and regulations under the Act, *see* New

---

[1] Section 21-23-6.2(C)(6) provides: "The commission shall promulgate and file, in accordance with the State Rules Act, rules and regulations that: . . . (6) assure that any career school licensed pursuant to the Post-Secondary Educational Institution Act has entered into a teach-out agreement with at least one other private or public institution operating in the state unless the commission determines that such an agreement is not feasible; . . . ."

3

Mexico Commission on Higher Education, Private Post-Secondary Licensure Operation Under the Post-Secondary Educational Institution Act, 5 NMAC 100.2 (Sept. 1996), Def. Ex. 4. The regulations provide that as a requirement for licensure, an institution must certify that none of its owners or managers has controlled or managed a defunct institution in the past five years that failed to provide for a teach-out of its students. *See* Reg. 12.3.[2] The regulations define "manager" as "the chief executive officer, senior business or finance officer, senior financial aid administrator, and senior academic officer . . . ." Reg. 12.8. Bass and Morley were aware of these regulations, and they asked Kari Cole, the Commission's Private Licensing Administrator, if they would be precluded from having the license for Trinity approved because of their management positions at Franklin College. Ms. Cole inquired whether either of them had any control over the budget or finances of Franklin College or if they ever signed checks for Franklin College. When assured that neither of them had such responsibilities, Ms. Cole told them that their application for licensing would not be negatively influenced simply because of their previous employment with the defunct Franklin College.

Bass and Morley began the application process for Trinity in August 1998, but they did not actually submit the application until May 1999, long after they filed this Complaint, and that application is not at issue in this case. Instead, on August 29, 1998,

---

[2] Regulation 12.3 provides: "An institution shall certify that no owner or manager of the institution: (a) has been convicted of or has pled no contest or guilty to a crime involving abuse of public funds; or (b) has controlled or managed an institution that has ceased operation during the past five years without providing for the completion of programs by its students. No institution shall be licensed to operate in New Mexico that does not provide such certification."

4

Plaintiffs entered into a contract with another private post-secondary educational institution, Parks College, to provide consulting services which would enable Parks College to expand its curriculum to provide the types of computer classes planned for Trinity. *See* Pl. Ex. 3. Parks College was in the process of having its license renewed under a new owner, Robert Paper. Defendant Hamlett sent a letter to Mr. Paper, the new President of Parks College, on September 11, 1998. In it Defendant cites regulation 12.3 and, in an unmistakable reference to Plaintiffs Bass and Morley, warns Paper that "the licensure of Parks College would be in question because of the hiring of individuals in managerial positions that were previously employed at a now defunct institution." Pl. Ex. 4. Defendant Hamlett subsequently met with Mr. Paper on September 30, 1998, to discuss Parks College's licensure. At that meeting, Mr. Paper argued that Bass and Morley were independent contractors, not employees of Parks College. Defendant Hamlett again expressed the opinion that Bass and Morley were in managerial positions at Parks College based on the list of their responsibilities under the contract. Their duties included administrative, marketing, recruiting and training responsibilities for the computer classes.

Bass and Morley learned of Hamlett's letter and of his meeting with Mr. Paper from various sources and attempted to arrange a meeting with Ms. Cole and/or Mr. Hamlett, but they were informed that Ms. Cole was prohibited from discussing the matter with them, and that Mr. Hamlett could not meet with them for at least a month. Mr. Paper considered but decided not to request an exemption for Bass and Morley.

5

Rather than risk having his license for Parks College denied, on October 5, 1998, he terminated the contract with Plaintiffs. Although there is evidence that Mr. Paper was not satisfied with Plaintiffs' preliminary performance under the contract, I will assume that the warning he received from Defendant Hamlett about Bass and Morley was the but-for reason for terminating the contract. I will also assume, for purposes of this motion, that Bass and Morley were not managers of Parks College under the contract within the meaning of the Commission's regulations, and that they bore no responsibility for Franklin College's failure to provide teach-outs for the students when the college closed.

## Discussion

**A. Procedural Due Process.** Count I alleges a violation of procedural due process under § 1983. Defendant Hamlett contends that this claim is not viable. He argues that Plaintiffs did not have a property interest in the contract with Parks College because they did not have a legitimate claim of entitlement in the continued viability of the contract. The following clause makes the contract with Plaintiffs terminable without cause at the will of Parks College:

> Parks may, at its sole discretion, terminate this Agreement at any time by giving written notice of such termination to TLS [Trinity]. Parks shall be liable to TLS for compensation and expenses incurred to the date of termination. In addition, should Parks continue the programs included within the consulting Agreement with TLS, Parks shall continue to compensate TLS as set forth in Exhibit "B", paragraphs 2 and 3.

Def. Ex. B, ¶ 5 at 1.

6

The Fourteenth Amendment to the United States Constitution protects citizens from deprivations of property without procedural due process. Board of Regents v. Roth, 408 U.S. 564, 569 (1972). Property interests are not created by the constitution, but instead are created by independent sources. Id. at 577. A valid contract can create a property interest that is protected from infringement without due process, Southern Disposal, Inc. v. Texas Waste Management, 161 F.3d 1259, 1265 (10th Cir. 1998), but a contract that is terminable at will does not give rise to a protected property interest because it does not lead to a legitimate expectation of continuation of the contract. Id.

Plaintiffs' attempt to distinguish their situation from the operation of this legal principle is unconvincing. The fact remains that Plaintiffs negotiated a contract with Parks College which gave them no legitimate expectation that the contract would continue absent just cause to terminate it. Therefore, I conclude that Plaintiffs enjoyed no property right in the contract with Parks College, and that the termination of that contract by Parks College, whether or not it was induced wrongfully by Defendant Hamlett, does not give rise to a procedural due process claim.

Plaintiffs next argue that their constitutionally protected property interest includes not just the contract with Parks College, but their ability to practice their teaching profession in the State of New Mexico. They cite Mills v. New Mexico State Bd. of Psychologist Examiners, 123 N.M. 421, 941 P.2d 502 (1997) for the proposition that the right to practice their teaching profession is constitutionally protected. They claim that because Defendant Hamlett wrongfully "blacklisted" them, Morley and Bass have

7

become "untouchable" and lost their ability to work for or contract with any private, post-secondary educational institution licensed by the Commission in any management capacity for five years.

Mills involved a challenge by a psychologist to the licensing board's requirement that she submit to an oral examination to reinstate her psychologist license after a short period of retirement, and to the board's refusal to grant her a hearing on the exam requirement. "The right to practice a profession is a constitutionally protected property interest." Id. at 427, 941 P.2d at 508. Mills faced the possibility of losing her license if she were forced to take the oral examination, and the Court remanded the case to the board to provide Mills a hearing in which to determine whether the exam requirement served a rational governmental purpose. Id. at 427-28, 941 P.2d at 508-09.

In contrast, Plaintiffs have come forward with no evidence that their right to practice their profession in New Mexico has been impaired to such an extent that constitutional protections are implicated. The question is whether a threat of being unable to work in an ownership or managerial position at a private college in New Mexico for a period of five years is a protected property interest. I believe that this case and the factual situation it presents does not provide a properly developed context in which to decide the procedural propriety of the actions taken by Defendant.

First, Plaintiffs' ability to own a private college is a matter that would trigger the protections inherent in the Commission's licensing procedures. Rather than pursue that avenue, Plaintiffs virtually abandoned their attempt to obtain licensure for Trinity for

nearly a year. Their justification for this is that "[a]fter our Agreement with Parks College was terminated, we realized that there was no way that our Application for Licensure would be fairly and impartially evaluated by [the Commission]." Aff. Morley, Pl. Ex. 1, ¶ 58 at 12. This is mere speculation. Second, Bass and Morley are not precluded from teaching in New Mexico, nor are they precluded from any non-managerial type employment in the education field, and there are many non-private educational institutions not regulated by the Commission with which they could seek managerial work. There is no evidence that Bass and Morley have applied for any other teaching or managerial position, or that they have attempted to enter into a contract with any private post-secondary educational institution, other than with Parks College. Their justification is that they "realized" that they would be prevented from entering into any other contracts like the one with Parks College, or be hired by any other institution licensed by the Commission "because Mr. Hamlett would apply the same erroneous interpretation of the ... Regulations." Id., ¶¶ 60, 61 at 13. This allegation is not rank speculation because Defendant informally opined that Bass and Morley were subject to the five-year prohibition, and this cost them the Parks College contract. But just because Parks College was unwilling to request a waiver for Bass and Morley or to request a hearing on the applicability of the regulations to them does not mean that a more established college would not have been willing to do so. Also, Plaintiffs allege that Hamlett refused to meet with them for at least a month, but they do not allege that either a meeting with Hamlett or a formal hearing with the Commission was requested to

9

challenge the breadth of the regulations as applied to them.

For these reasons, the procedural due process claim will be dismissed.

**B. Substantive Due Process.** In Count II, Plaintiffs allege a violation of their substantive due process rights under § 1983. This claim is legally insufficient. The Due Process Clause of the Fourteenth Amendment contains a substantive component "that protects individual liberty against 'certain government actions regardless of the fairness of the procedures used to implement them.'" Collins v. City of Harker Heights, 503 U.S. 115, 125 (1992) (*quoting* Daniels v. Williams, 474 U.S. 327, 331 (1986)). Substantive due process prevents government from abusing its power or employing it as an instrument of oppression. Collins, 503 U.S. at 126; DeShaney v. Winnebago County Dept. of Social Servs., 489 U.S. 189, 196 (1989). To state a substantive due process claim, a plaintiff must allege an abuse of power that shocks the conscience. Collins, 503 U.S. at 125; Tonkovich v. Kansas Bd. of Regents, 159 F.3d 504, 528-29 (10th Cir. 1998).

Plaintiffs cite N.M. Stat. Ann. 1978 § 30-13-3 (Repl. Pam. 1994)[3] for the proposition that blacklisting is considered outrageous by the New Mexico legislature. The statute makes it a misdemeanor for an employer to prevent or attempt to prevent a former employee from obtaining other employment, but exempts "an accurate report or honest opinion" about the employee's qualifications and performance. Nothing in the

---

[3] The statute provides: "Blacklisting consists of an employer or his agent preventing or attempting to prevent a former employee from obtaining other employment. Whoever commits blacklisting is guilty of a misdemeanor. Upon request, an employer may give an accurate report or honest opinion of the qualifications and the performance of a former employee. An employer is defined as any person employing labor or the agent of such person."

record suggests that Defendant Hamlett's actions amounted to criminal blacklisting. Defendant's actions in this case revolved around his interpretation of facially valid regulations issued pursuant to a New Mexico statute designed to protect students enrolled in private colleges from exploitation. His application and interpretation of the regulations to Plaintiffs is not so obviously unjustified as to be outrageous. Plaintiffs attempt to portray themselves as scapegoats by showing that Hamlett acted to punish them because he was subjected to pressure due to the Franklin College fiasco. Even if true, this does not rise to the level of outrageousness required under the substantive due process clause.

**Qualified Immunity**

"Qualified immunity shields government officials performing discretionary functions from individual liability under 42 U.S.C. § 1983 unless their conduct violates 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" Baptiste v. J.C. Penney Co., 147 F.3d 1252, 1255 (10th Cir. 1998) (*quoting* Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). When the qualified immunity defense is brought up on a summary judgment motion, "the plaintiff bears the burden of (1) coming forward with sufficient facts to show that the defendant's actions violated a federal constitutional or statutory right and (2) demonstrating that the right violated was clearly established at the time of the conduct at issue." Baptiste, 147 F.3d at 1255. Only if the plaintiff establishes both the facts to support the violation of a federal right and that

11

the law was clearly established does the normal summary judgment burden shift back to the defendant (to show that no material issues of fact remain and that she is entitled to judgment as a matter of law); otherwise the court must grant the defendant qualified immunity. Pallottino v. City of Rio Rancho, 31 F.3d 1023, 1026 (10th Cir. 1994).

Plaintiffs failed to carry their burden to demonstrate that Defendant's actions violated due process, and in my view Defendant's interpretation of the regulations and his actions taken pursuant to that interpretation were objectively reasonable. Therefore, Defendant is entitled to qualified immunity.

NOW, THEREFORE, IT IS ORDERED that Defendant's Motion For Summary Judgment is hereby GRANTED. A separate Summary Judgment shall be entered herewith.

_____
SENIOR UNITED STATES DISTRICT JUDGE

Counsel for Plaintiffs:  Randall L. Thompson, THOMPSON, KUSHNER & RHOADES, Albuquerque, N.M.

Counsel for Defendant:  Susan Weckesser, Legal Bureau, State Risk Management Legal Office, Santa Fe, N.M.